Willow Way v. Village of Lyons is the next case for argument. Mr. Bolton. May it please the Court, I will attempt to reserve three minutes for rebuttal. Your Honors, in order, I'll take it a bit out of order so as to not run out of time. Going to the eminent domain count three, Your Honor, it appears to us that the Village does not contest that Judge Chang improperly did not exercise his diversity jurisdiction. They simply make a jurisdictional attack based on damages, Your Honor, but that was never raised below. Well, the problem is, you are effectively saying that jurisdiction was conceded in the District Court, and you can never concede jurisdiction. It is open to challenge at every stage of the case, even before the Supreme Court, even if we ignore it. What the Village is saying is that the state law claim depends on the diversity jurisdiction, and that depends on more than $75,000 being the amount in controversy. Indeed, Your Honor. So what in the record shows that the amount in controversy exceeds $75,000? There is only the $15,000, Your Honor. I concede that there is only the $15,000 in the record. That's the purchase price of the parcel. No, that's not the purchase price of the parcel. That was an escrow required by the City, which was the Village, which was never given back. All right. What does the record show about the purchase price? The record does not show the purchase price. What does the record show about the current value compared to the purchase price? It does not show the current value. Are there any allegations about the purchase price or the current value? No, Your Honor, but there is our amended jurisdictional statement, 27-1, where we listed out for this court the damages that are claimed by Willow Way and challenged by the court as to the jurisdictional amount. We did provide the claimed damages in our jurisdictional statement. Your Honor, so it is before the court as far as this court, and it is detailed. Do you want to file an amended pleading under 28 U.S.C. 1653? Were you here, I trust, when we discussed this with counsel in an earlier case? Yes, Your Honor, if Your Honor wants us to detail out what our claim is. Since your briefs don't even try to explain how the amount in controversy exceeds $75,000, I think if you have any chance on the diversity branch, you're going to need to file an amended complaint and ask us to permit you to do it under 1653.  And in particular, I guess I have trouble seeing, you've identified various out-of-pocket expenses, but I would think that your damages would be, in essence, the difference in value in the property the day before the demolition occurred and after it occurred. Part of it, Your Honor, but as we, in our answers, as we say in our jurisdictional statement, our out-of-pockets go with the $15,000 that was deposited with the city. We spent a considerable amount of money attempting to renovate this property, which was essentially eliminated. Well, but the question is, what was the property worth in essence the moment before the wrecking ball swung, right? Yes, Your Honor, that's certainly. Whether your money up to that point had been spent wisely or not. True, Your Honor, and that is certainly a central contention, and it is certainly a central issue. I don't disagree with you about that. Well, if you're going to take advantage of your opportunity under 1653, please do listen to Judge Hamilton and address that question. I did listen, Your Honor. What was the effect of the demolition on the value of the property before and after? I understand, Your Honor. I acknowledge it. Your Honor, our essential, as to the takings issue, our essential position is that the judge below agreed with the appellees that all they had to do was declare it a nuisance, provide notice, and everything is over. What we have stated in our brief and provided a substantial record is that we are in a different question, which is what happens when the village has affirmatively prevented the completion of the renovation? With a building permit, Your Honor, and part of our argument is that, as recognized by Judge Koukouris in the Pittsfield case, the building permit under Illinois law does present a property interest that is defensible and can be a taking. So if the… The Supreme Court of the United States has held that permits are not property interests. Yes, Your Honor, I understand that. I'm simply going under Illinois. Decisions of the Supreme Court supersede decisions of federal district judges. Thank you, Your Honor. It's perfectly straightforward. Thank you, Your Honor. We are going to the point of what happens when the… Yes, thank you, Your Honor. We are going to the point of what happens when the village has affirmatively blocked these groups from completing their project. So didn't your contractor testify the problem wasn't a stop work order but that he wasn't getting paid? Well, he eventually left because he wasn't paid, Your Honor, but he also stated that he couldn't cooperate, the city was giving him no cooperation. One of the prime ones, Your Honor, being the last report of October 2017 when Mr. Pierce took four steps into the building and then admitted that he made all of his determinations over photographs when he had no idea how old those photographs were. Mr. Bolton, let me cut to the chase here since time is limited.  We have…the concept of a nuisance is pretty well understood in the law. And Illinois, as near as I can tell, provides ample procedures for resolving such disputes before a wrecking ball swings, right? If we accept your theories here, please tell me how we avoid turning, in essence, every nuisance condemnation into a federal case. Well, Your Honor, I would go to the facts in that it is a standard that you would adopt. I believe that the facts here don't show mere negligence. The facts here demonstrate an affirmative desire of this city that this project not be completed. For example, going for example… Well, okay. What that suggests to me, though, is that anytime a property owner, for whatever reason, leaves a property in terrible shape and the city moves to condemn it and the owner does not take advantage of the procedures provided by state law, that you're in federal court contesting negligence or willfulness or personal vendettas or political vendettas or whatever. But it's all going to come into a federal court. Well, Your Honor, the issue here, though, is the egregiousness of the conduct. And I see I'm at three minutes, Your Honor, but I'd like to answer your question. Your Honor, we have a case here. And as Penn Central said, these are facts… What you're saying is this is a really bad case, so we're entitled to be in federal court. Penn Central stated, in the Supreme Court, Penn Central stated there are no bright lines. It is a fact-based determination. The Penn Central case was not about the demolition of a hazardous building. True, Your Honor. Nor did it concern the adequacy of procedures in Illinois. I wish you would deal with the question Judge Hamilton asked. Your Honor, I will, Your Honor. I am going to the issue of the fact that there was willful conduct here. For example, number one, the attorney was lied to on the day of the demolition, saying, We will work with you. Don't worry about it. While the demolition was going on, village officials and city hall lied to our attorney. Number two, they put together a report which they relied on and declared a nuisance and never gave—they admitted they never gave that report to Willoway. They never told Willoway what had to be fixed. In December, did you receive ample notice? Did Willoway receive notice in December that this was going to be—the city was taking this as nuisance and this was going to be— We admit that it was sent to their premises in California, Your Honor. They did receive it, which is when they began to make an attempt to engage the city. However, as John Pierce, the building inspector, testified— But this doesn't happen until February. Well, they made attempts all through trying to get through to the city. What happened, Your Honor, is that the city—I apologize, Your Honor— the city did not engage with them. John Pierce testified that once he made his decision in the fall or the summer, everything would roll and there would be no change. There would be no remediation. There would be no discussion. And they made good on that by not— Was there a stay filed for the demolition process? I'm sorry, Your Honor? Was there automatic—was there anything filed to stay? No, Your Honor. We admit that there was not. But our point, Your Honor, is that when the village takes the affirmative actions that they did, then we are in a different realm, Your Honor, that they cannot hide behind the prophylactic protections of notice and a declaration that it's a nuisance when the village has participated in maintaining that nuisance by preventing them from completing the project. I thank Your Honor. I would just not reserve the rest of the rebuttal. I wouldn't force—Your Honor, I'll waive rebuttal only because I'm at 45 seconds and we've gone on. Well, you may choose what to do once you hear what Mr. Murphy has to say. Thank you, Your Honor. I apologize about the paper. Mr. Murphy. May it please the Court, I'd like to follow up on two of the points Judge Hamilton raised. The first, dealing with diversity. The issue of how much money the owner or plaintiff may have spent on the property at best becomes part of the basis in terms of what Your Honor said was the value of the property the day before the demolition. That goes into that calculation where there is zero evidence on that point. And then to get to the takings issue. In terms of this statute, Judge Pryor records undisputed that the statute requires multiple forms of notice. Placard notice, public record notice, actual notice, law bulletin notice. They received every single form of notice which the statute requires. The record is undisputed that the CEO of the company received actual notice of the pending demolition, including the citation of the statute. Every single argument, every single argument, which plaintiff is making in this case, that this was an improvident or bad demolition of property, could have been raised as a defense to the demolition action. How? By taking what this Court referred to in 1997 as a rudimentary precaution. And that rudimentary precaution is once they got that notice, not to let that 30 days expire, and file a simple complaint in the circuit court of Cook County, in this case in Bridgeview. And that effects an automatic stay. Once that notice is filed in court, the village's efforts to demolish that property must cease. It then becomes the village's burden of proof to show that that property should have been demolished. That's where cost-benefit comes in. That's where all of these factors that would come into the balance in a regular demolition case be litigated. Had they simply followed the statute and protected their rights, we wouldn't be here today. Why? Because they could have defended the case. They chose not to. The argument that on February 27, building inspectors said, well, we won't demolish, but we demolished it, that's a defense. That could have been raised. It could have been prevented by timely notice and suit in state court. It could have been used as a defense in a subsequent lien foreclosure action. This statute is property owner friendly. The statute helps property owners who help themselves. And it doesn't take much to help yourself. And the fundamental question that plaintiff ignores has nothing to do with Penn Central. It's the principle that in takings law, nuisance is part of the common law of property. Nobody has the right to have a nuisance property. And that the Supreme Court just reiterated that in the Cedar case. So the statute in this case makes explicit what the common law has recognized forever. Right, but the problem is there are an awful lot of consequences that flow from the designation of a nuisance. Right, but the question is whether the designation of being a nuisance is subject to some kinds of either substantive or procedural protections under the Constitution. Right? I would say yes to due process clause. And this statute provides all the due process necessary. It's got procedure. It's hard to imagine more procedures. Up the yin-yang. Out the yin-yang or whatever. But in terms of substantive standards, I would think that if a, let's suppose a, I understand you don't think that's what happened here, but that if a local government decided, in essence, we're going to dream up some new standards for what amounts to a nuisance, that there might be some constitutional limits somewhere out there. There could be. Now, the mere demolition of a house is not. Why? Because on the mere demolition of the house, the owner has not lost title. That is one stick in the bundle being taken away. On the other hand, you're on. It's a big stick, but. In this case, it wasn't many sticks. It's got a lot of sticks in it, actually. If you look at that house, it wasn't many sticks in there, including no front porch. On the other hand, if the. But you surely would agree. Forget about substantive due process for the moment. If the village demolishes something without a rational basis for doing so, that's a classic equal protection claim, right? Now, the ability to litigate in state court might be all the protection that's required for that kind of claim. But I trust you're not denying that there are some limits on whether the village can just wave its hand and say, we just want to knock this one down. We haven't knocked one down in a month. We like knocking things down. I'm well aware of Mrs. Olick. So if this were a class of one equal protection case, fueled either by an invidious discrimination or completely irrational aspect, that might be an equal protection claim. So there are constitutional limits. But on the takings angle, I make the point in our brief that let's assume that we demolished the building. And then say, nobody can build anything here because we think it'll cause drainage problems. That's a potential taking. Actually, we would call that a zoning decision. And then we'd say, this village can have what zoning rules it likes. And that the federal court is not a board of zoning appeals, as Your Honor has said on multiple occasions. We have indeed. So I think one of the problems that plaintiff created in this case procedurally is, number one, they didn't follow a statute. And number two, when Judge Chang issued the summary judgment rule and dismissed without prejudice on supplemental jurisdiction, plaintiff should have filed a motion to reconsider saying, wait a minute, we have a diversity claim here. They didn't do any of that. So, Your Honor, I think, unless there are any further questions, I think you understand our point in this case. And we ask that we be affirmed. Thank you. Well, you've got 46 seconds, counsel. Mr. Bolton, have you reconsidered? Your Honor, I would simply state that in claiming that we could have filed a lawsuit and that would have stopped the entire incidents of February, it's quite an argument to say that you should have filed a lawsuit so we wouldn't have to lie to you, which is essentially what you just heard. My point, Your Honor, is that I think Your Honor's questions go to the heart of the matter, which is when a municipality has acted arbitrarily and irresponsibly in an attempt to obtain property for whatever reason, and we're not saying that we ever recovered a reason, that when that occurs by affirmative conduct that prevents a homeowner from completing the project by actions of the municipality and omissions of the municipality that were intentional. They have no right to claim the prophylactic protections of the state statute because now we're going into a different type of entity where we're in that sort of grim. I've noticed my time is up, Your Honor. Thank you, counsel. Now, we invite you, Mr. Bolton, to file within 14 days any supplemental allegations you might have under 28 U.S.C. 1653 that would show what injury was caused by the demolition. Not other things that might have happened, but the damages caused by the demolition. Okay? And I thank you for reciting the statute again, Your Honor, because you saved me a trip. Mr. Murphy, you're free to respond. Thank you, Your Honor. The case will be taken under advisement when the supplemental filings have been received.